UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BILLIE HAVILAND,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. 1:15-CV-3209-JTR<br><br>ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 15, 17. Attorney D. James Tree represents Billie Haviland (Plaintiff); Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on November 28, 2011, alleging disability since July 1, 2002, due to "Stenosing Tenosynovitis," bipolar syndrome, rheumatoid arthritis, diabetes, "Recovering drug addict," and posttraumatic stress disorder (PTSD). Tr. 270. The applications were denied initially and upon reconsideration.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 1

Administrative Law Judge (ALJ) Laura Valente held a hearing on January 21, 2014, Tr. 42-78, and issued an unfavorable decision on April 25, 2014, Tr. 20-36. The Appeals Council denied Plaintiff's request for review on October 15, 2015. Tr. 1-6. The ALJ's April 2014 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on December 15, 2015. ECF No. 1, 4.

## STATEMENT OF FACTS

Plaintiff was born on July 7, 1972, and was 29 years old on the alleged onset date, July 1, 2002. Tr. 211. Plaintiff completed school through the 11th grade, and it does not appear she has obtained a GED. Tr. 271, 578. She has worked as a bartender, a caregiver, an escrow clerk at a title company, a receptionist and a laborer. Tr. 72, 271. At the administrative hearing, Plaintiff testified she attempted a return to work in 2009. Tr. 54-55. She worked for a temp agency doing manual labor jobs, but was let go because she was allegedly unable to perform the work. Tr. 55-57. She stated she worked two temporary jobs, full-time, for a period of 10 or 12 months. Tr. 55-57. Plaintiff's "Disability Report" indicates she was working as a caregiver at the time of the reporting. Tr. 270-271. Since 2010, she has been a paid care provider for her developmentally delayed daughter. Tr. 57-58. Plaintiff indicated her daughter was fairly self-sufficient and primarily needed help with being kept safe and making good choices. Tr. 59-60.

Plaintiff testified that in 2002 she cared for her two children, ages three and 12/13. Tr. 47. She stated, at that time and because of her back pain, she received assistance from her mother and mother-in-law with childcare, housework, and yard care. Tr. 48. Between 2002 and 2006, she was still able to take care of her personal hygiene, drive and do the grocery shopping. Tr. 49-50. However, Plaintiff indicated she would need help with heavy items while grocery shopping and she did not drive long distances (less than 15 minutes at a time). Tr. 50-51. In

2005, her children and husband started to assist her with everyday chores as opposed to her mother and mother-in-law. Tr. 50. She stated she was able to do chores like dusting, cleaning the floors, and doing the dishes throughout the day, but these chores would be punctuated with periods of rest. Tr. 52. Plaintiff testified she spends most of the day lying down due to her back pain. Tr. 53.

With respect to Plaintiff's back pain, she testified she had prior back surgery, was scheduled for additional back surgery, and was planning a future surgery on her neck. Tr. 60-61. Plaintiff stated her decision to undergo these surgeries was the result of increased difficulty with walking. Tr. 62. At the time of the hearing, she was using a walker and/or a cane to assist her with walking. Tr. 62. Plaintiff testified she had radiating pain in both legs, but the pain was more severe on the right. Tr. 65. The pain radiated all the way to her toes. Tr. 65. She stated she also had radiating pain in her arms and hands and many times her hands are numb and swollen. Tr. 65.

Plaintiff testified she has experienced migraine headaches since a 1989 car accident. Tr. 53. She described the migraines as sometimes lasting all day, and she must lie down in a dark, quiet room to alleviate the symptoms. Tr. 53-54. Plaintiff also indicated she has a bipolar disorder and experienced anxiety/panic attacks. Tr. 66-67, 69-70. She further stated she experiences symptoms from PTSD, including flashbacks, nightmares, panic attacks and difficulty being around strangers. Tr. 69. However, Plaintiff was not receiving treatment for any mental health issues at the time of the administrative hearing and indicated she did not take medication for mental health symptoms because it caused her to gain weight. Tr. 65-66.

Plaintiff testified she had used cocaine and crack cocaine off and on since 1989. Tr. 64. She indicated she continued to use marijuana on a daily basis, but had never used methamphetamine or heroin and never had a problem with alcohol. Tr. 64. She stated she last used street drugs in 2006. Tr. 63-64.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 3

# STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

# SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents her

from engaging in her previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On April 25, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 1, 2002, the alleged onset date. Tr. 22. At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease with radiculopathy, degenerative joint disease of the right knee, and obesity. Tr. 22. The ALJ specifically found Plaintiff's diabetes mellitus, fatty infiltration of her liver, migraine headaches, bilateral dorsal tenosynovitis and carpal tunnel syndrome, rheumatoid arthritis, and mental health issues were not severe impairments. Tr. 24-27. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 27.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined Plaintiff could perform sedentary exertion level work, but with the following additional limitations: she could lift and carry 10 pounds occasionally and less than 10 pounds frequently; could stand or walk, combined, for four hours total and sit for six hours total in an eight-hour workday; could frequently push or pull with her bilateral upper extremities up to the weight limits for lifting and carrying; could perform all postural movements occasionally, except never climb

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 5

ladders, ropes or scaffolds, and frequently balance; could occasionally push or pull with the right lower extremity, such as for operation of foot pedals; could frequently reach overhead, bilaterally; and must avoid concentrated exposure to extreme cold, vibrations, and hazards, such as heights or dangerous machinery. Tr. 28.

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a receptionist, a bartender, an escrow clerk and a child monitor. Tr. 34. At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the jobs of bench assembler and call-out operator. Tr. 35-36. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 1, 2002, the alleged onset date, through the date of the ALJ's decision, April 25, 2014.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) excluding multiple severe impairments at step two of the sequential evaluation process; (2) discrediting Plaintiff's symptom testimony; and (3) improperly rejecting the opinions of Drs. Pellicer and Mbakwe.

## DISCUSSION

### A. Plaintiff's Subjective Complaints

Plaintiff contends the ALJ erred by improperly rejecting her testimony as not credible. ECF No. 15 at 11-18.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be

supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could possibly cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. Tr. 29. With regard to this credibility determination, the ALJ provided numerous valid reasons for finding Plaintiff less than fully credible.

First, the ALJ indicated the medical evidence of record did not support Plaintiff's assertions about her physical limitations. Tr. 29-30. A lack of supporting objective medical evidence is a factor which may be considered in evaluating a claimant's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991). The ALJ noted the findings and opinions of Dale Thuline, M.D., Tr. 88-90, Gordon Hale, M.D., Tr. 112-114, and Mary Pellicer, M.D., Tr. 414, as consistent with the ALJ's conclusion that Plaintiff could perform sedentary work. Tr. 29. Furthermore, the ALJ indicated the November 2011 report of Todd B. Orvald, M.D., Tr. 487-489, refuted Plaintiff's allegations of disabling physical symptoms since Dr. Orvald found no clear etiology for Plaintiff's low back and bilateral leg pain and nothing from a surgical standpoint which suggested pathology. Tr. 30. The ALJ noted Plaintiff showed

normal gait and station in February 2010 and reported being in "excellent health with no ongoing medical issues" aside from ganglion cysts in her wrists and numbness in her hands, Tr. 500-501; March 2010 exam notes showed Plaintiff had full range of motion in her spine, normal gait, and normal muscle strength, Tr. 405-406; in May 2011 Plaintiff appeared comfortable during a physical examination and denied joint pain or swelling, Tr. 512; and Plaintiff walked with normal gait and retained full motor strength in her lower extremities in January 2012, despite also presenting with significant spinal range of motion limitations and a positive straight leg raising test, Tr. 570-572. Tr. 30. As determined by the ALJ, the evidence of record does not support the disabling physical symptoms asserted by Plaintiff in this case. It was thus proper for the ALJ to conclude Plaintiff was not entirely credible because her alleged level of physical limitation was not consistent with the medical evidence.

The ALJ also reported records show Plaintiff's symptoms responded to treatment and were thus not as severe as she alleged. Tr. 30. The effectiveness of medication and treatment in alleviating pain and other symptoms is a relevant factor to consider in evaluating the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3)(iv)-(v); *see Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ may properly rely on a report that a claimant's symptoms improved with the use of medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (noting impairments that are controlled by treatment cannot be considered disabling). In September 2012, Plaintiff ambulated with difficulty, displayed tenderness along her spine, and range of motion was limited in her spine. Tr. 30, 634. Plaintiff was started on tramadol for the pain. *Id*. In October 2012, Plaintiff had no tenderness over her spine, normal range of motion, full strength in her extremities, and no signs of acute synovitis. Tr. 30, 607. In November 2012, Plaintiff again had no tenderness over her spine and normal range of motion. Tr. 30, 605. She reported no complaints, stated she "feels really good," and was very

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 8

happy with the tramadol because it had relieved most of her pain and she was able to sleep "very well". Tr. 30, 603. Plaintiff's symptoms worsened in May/June 2013, and she underwent back surgery in July 2013. Tr. 30. At a four-month post-operative appointment in November 2013, Plaintiff reported 0/10 pain, walking with no assistive devices, and that her radiculopathic pain was improving with Neurontin. Tr. 30, 666. The examination revealed full strength in all muscle groups of her extremities. *Id*. As indicated by the ALJ, the record reflects the effectiveness of medication and treatment in alleviating Plaintiff's symptoms. It was proper for the ALJ to conclude Plaintiff's was not fully credible because medical reports show her symptoms improved with medication and treatment.

      The ALJ next noted the record revealed inconsistencies in Plaintiff's reporting, which diminished her credibility. Tr. 30-31. Inconsistencies in a disability claimant's testimony support a decision by an ALJ that a claimant lacks credibility with respect to her claim of disabling pain. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986). The ALJ indicated the record showed significant inconsistencies in Plaintiff's pain reports. Tr. 30. For example, Plaintiff reported on April 8, 2013, to taking only ibuprofen for back pain and stated she had no muscle aches or weakness, no arthralgias or joint pain, and no swelling in her extremities. Tr. 30, 593-595. On April 11, 2013, Plaintiff reported her pain as 1/10 and said it was occasional, she was not using an assistive device to walk, and had been engaged in light work activity. Tr. 30-31, 639. However, On April 15, 2013, Plaintiff complained of back pain radiating into her right leg. Tr. 31, 655. The examination found pain with palpation, but revealed normal rotation, normal hip range of motion, and full muscle strength and range of motion in her lower extremities. *Id*. Moreover, while Plaintiff has alleged she uses an assistive device to walk most of the time and testified she underwent back surgery because she could hardly walk, these claims are not consistent with the medical evidence of record. Tr. 31. In January 2012 she walked with a normal gait, Tr. 571; in a

March 2012 psychological examination with Jay M. Toews, Ed. D., Tr. 576-580, and June 2013 examination with Hoan P. Tran, M.D., Tr. 662-663, there is no mention of an assistive device for walking (although Dr. Tran did note Plaintiff reported to walking hunched over and would lean on a shopping cart while shopping); in October 2013 Plaintiff mentioned a need for a walker and complained of bilateral, disabling knee pain, but a physical examination did not reveal a "good explanation" for her reported knee pain, Tr. 677-678; and in November 2013 Plaintiff reported to Dr. Tran she was maintaining an active lifestyle, was increasing her ambulation and no longer needed an assistive device to walk, Tr. 666. The ALJ did not err by noting the foregoing inconsistencies to find Plaintiff less than fully credible in this case.

The ALJ next indicated the record suggested Plaintiff was motived by a desire to obtain disability benefits, and this desire for secondary gain eroded the credibility of her allegations of disability. Tr. 31. The Ninth Circuit has recognized that the ALJ may consider the issue of secondary gain in rejecting symptom testimony. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996) (allowing an ALJ to judge credibility based on a strong element of secondary gain); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (the ALJ may properly consider the issue of motivation in assessing credibility). The ALJ noted Plaintiff walked with an antalgic gain and "exhibited significant pain behavior" during Dr. Toews' March 2012 psychological examination, Tr. 576; Plaintiff's September 2012 request to Vani Bremjit, M.D., to provide an evaluation for disability was refused, Tr. 652; and Plaintiff requested assistance in pursuit of social security disability in October 2012 from Ogechi Mbakwe, M.D., despite Plaintiff's reported improvement of symptoms, Tr. 608. Tr. 31. Plaintiff's apparent motivation for secondary gain is another permissible basis for the ALJ to find Plaintiff less than fully credible in this case.

///

The ALJ additionally held that Plaintiff's reported activities were inconsistent with the presence of a physical disability. Tr. 31. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ indicated records show Plaintiff reported having no trouble with her activities of daily living in September 2010, Tr. 400; Plaintiff informed Mary Pellicer, M.D., in March 2011 that she was able to perform chores and all self-care activities, although they may take a while, Tr. 410; Plaintiff reported to Dr. Toews in March 2012 she was fully independent in self-care, cared for her developmentally delayed daughter, and was able to shop independently, prepare meals, and do light housework and laundry, Tr. 578; and Plaintiff was able to drive to appointments, Tr. 408. Tr. 31. As noted by the ALJ, such activities contradict Plaintiff's allegations of debilitating pain and her claim that she needed help with activities of daily living. Tr. 31. It was proper for the ALJ to consider this level of activity as inconsistent with Plaintiff's claim of totally disabling limitations. *See Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012).

The ALJ further noted the record revealed Plaintiff had worked during the time period she alleged she was disabled. Tr. 31-32. The ability to work can be considered in assessing credibility. *Bray v. Comm'r Social Security Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the ALJ properly discounted a plaintiff's testimony because she recently worked as a personal caregiver for two years and had since sought out other employment). The ALJ indicated Plaintiff testified at the administrative hearing that she worked in 2009 and 2010, Tr. 54-55; Plaintiff reported she worked for a temp agency doing manual labor jobs, but was let go because she was allegedly unable to perform the work, Tr. 55-57; Plaintiff stated she worked two temporary jobs, full-time, for a period of 10 or 12 months, Tr. 55-57; and Plaintiff stated she has worked as a paid care provider for her developmentally delayed daughter since 2010, Tr. 57-58. Tr. 31-32. The ALJ

properly determined Plaintiff's ability to perform these physically demanding jobs for several months and provide caregiving services for her daughter contradicted her claims of total disability during the same time period.

The ALJ next noted Plaintiff reported she stopped working when her daughter became ill and required care. Tr. 32, 578. It is thus apparent the ALJ found that the fact Plaintiff quit working for reasons unrelated to her impairments detracted from her credibility. Tr. 32. The inability to work due to nondisability factors is a valid basis for rejecting a claimant's credibility. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (stating that in making a credibility determination, the ALJ did not err by considering that claimant left his job because he was laid off, rather than because he was injured). The ALJ properly discounted Plaintiff's credibility on the basis that she stopped working for reasons unrelated to her alleged disabling impairments.

The ALJ lastly found Plaintiff's inconsistent and inaccurate reports regarding her history of substance abuse further undermined her credibility. Tr. 32. An ALJ may properly consider evidence of a claimant's substance use in assessing credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ's finding that claimant was not a reliable historian regarding drug and alcohol usage supports a negative credibility determination); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding). The ALJ noted Plaintiff testified she had used cocaine and crack cocaine off and on since 1989. Tr. 32, 63-64. She stated she continued to use marijuana on a daily basis, but had never used methamphetamine or heroin and never had a problem with alcohol. Tr. 64. Plaintiff testified she last used street drugs in 2006. However, Plaintiff tested positive for methamphetamine during a June 2006 hospitalization, Tr. 349; informed Dr. Pellicer in March 2011 she had been sober since July 2005, Tr. 410; denied using illicit drugs in November 2011, Tr. 487; and

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 12

indicated in September 2012 she had been clean and sober for about 9 years, Tr. 633. Tr. 32. It was proper for the ALJ to find these noted inconsistencies regarding Plaintiff's report of substance use diminished her overall credibility.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). Based on the foregoing, the Court concludes the rationale provided by the ALJ for discrediting Plaintiff is clear and convincing. Accordingly, the ALJ did not err by finding Plaintiff's allegations were not entirely credible in this case.

**B.     Step Two**

Plaintiff argues the ALJ erred by excluding multiple severe impairments at step two of the sequential evaluation process. ECF No. 15 at 5-11. The undersigned agrees.

Plaintiff has the burden of proving she has a severe impairment at step two of the sequential evaluation process. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows she has a severe impairment. 20 C.F.R. § 416.912(a). The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities. An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. "Basic work activities" are defined as the abilities and aptitudes necessary to do most jobs. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b).

///

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 13

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An ALJ may find a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence." S.S.R. 85-28 (1985); *Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005). In reviewing the claimed error, the Court must consider whether the record includes evidence of a severe impairment and, if so, whether the ALJ's response to that evidence was legally correct.

In this case, the ALJ concluded Plaintiff has severe physical impairments; however, the ALJ evaluated the evidence of record, considered the hearing testimony, and concluded Plaintiff did not have a severe impairment related to her wrist and hand issues, a severe, medically determinable impairment of rheumatoid arthritis, or a severe mental health impairment. Tr. 22-26.

### 1.    Wrist/Hand Impairments and Arthritis

With respect to Plaintiff's complaints regarding wrist and hand symptomology, the ALJ found her carpal tunnel syndrome symptoms resolved with surgery, she was able to work with tenosynovitis, and objective medical findings indicated she retained good function despite her symptoms. Tr. 24. However, as indicated by Plaintiff, she first reported problems with her hands and wrists in January 2010, Tr. 517, and nerve conduction studies later confirmed bilateral carpal tunnel syndrome, Tr. 502. ECF No. 15 at 8. Plaintiff underwent right carpal tunnel release and extensor tenosynovectomy in November 2010. Tr. 503-504. A ligament tear in her left wrist was discovered in April 2011, Tr. 465-466, and she underwent left carpal tunnel release and tenosynovectomy in May 2011, Tr. 647. A June 2011 examination revealed swelling in her wrists and hands, with a decreased range of motion in the right wrist, Tr. 509, and a March 2012 examination noted decreased handgrip, strength and range of motion in her wrists, Tr. 408-414. In February 2013, Plaintiff reported her left wrist symptoms

had returned. Tr. 647-649. Swelling was noted and she once again had decreased range of motion. Tr. 649. A repeat tenosynovectomy of the left wrist was performed in March 2013. Tr. 643-645. In October 2013, Plaintiff presented with increased pain and swelling in her right hand. Tr. 679.

With regard to Plaintiff's alleged arthritis, the ALJ concluded the medical record did not definitively establish rheumatoid arthritis as a medically determinable impairment. Tr. 25. However, as noted by the ALJ, laboratory tests performed in February 2010 were positive for RNP autoantibodies, consistent with mixed connective tissue disease, but negative for other factors, Tr. 343. Tr. 25. Rheumatologist Wendy Eider, M.D., examined Plaintiff in June 2011 and found no clear evidence of mixed connective tissue disease, but still diagnosed "arthritis-wrists," Tr. 400-402. Tr. 25. Plaintiff had another positive RNP autoantibodies test in June 2011, Tr. 441, and again in October 2011, Tr. 430. Tr. 25. In November 2011, Todd Orvald, M.D., examined Plaintiff, opined there was "some form of seronegative inflammatory arthropathy probably taking place," and referred Plaintiff to a rheumatologist. Tr. 489. Plaintiff had another positive RNP autoantibodies test in October 2012. Tr. 609. In November 2013, John W. Adkison, M.D., indicated Plaintiff's problem appeared to be some arthritic involvement of the right second MCP joint and felt Plaintiff needed assessment and ongoing care by a rheumatologist. Tr. 675-676. Positive HLA-B27 testing confirmed a diagnosis of spondyloarthropathy arthritis in January 2014. Tr. 689.

Although Plaintiff ultimately bears the burden of establishing her disability, *see Bowen*, 482 U.S. at 146, the ALJ has an affirmative duty to supplement Plaintiff's medical record, to the extent it is incomplete, before rejecting her claim of a severe impairment. *See* 20 C.F.R. § 404.1512(e); S.S.R. 96-5p (1996). "In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ's duty to supplement

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 15

Plaintiff's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

At a minimum, the medical evidence was sufficiently ambiguous with regard to Plaintiff's hand/wrist impairments and arthritis to trigger the ALJ's duty to fully and fairly develop the record. In any event, the Court finds the medical records, as outlined above, demonstrate problems with Plaintiff's hands/wrists and arthritis sufficient to pass the de minimis threshold of step two of the sequential evaluation process. *See Smolen*, 80 F.3d at 1290.

### 2. Mental Impairments

As to Plaintiff's mental impairments, the ALJ determined Plaintiff's alleged affective disorder, PTSD, anxiety disorder, personality disorder and organic mental disorder did not cause more than minimal limitations in her ability to perform basic mental work activities. Tr. 26.

The ALJ cites the March 2012 psychological evaluation completed by Jay M. Toews, Ed.D, as support for the conclusion that Plaintiff's mental health disorders are not severe. Tr. 26. While Dr. Toews opined that Plaintiff appeared "capable of returning to some type of general office work," he also diagnosed Plaintiff with PTSD, chronic, mild; bipolar disorder by history; panic disorder by history, rule out cognitive disorder, not otherwise specified, secondary to motor vehicle accident; and history of polysubstance abuse in self-reported remission and assessed a Global Assessment of Functioning (GAF) score[1] of 50-55, indicative of

---

[1] The ALJ has no obligation to credit or even consider GAF scores in the disability determination. *See* 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings."). In fact, the GAF scale is no longer included in the

moderate symptoms. Tr. 580.  Furthermore, Plaintiff presented at Yakima Valley Memorial Hospital for psychiatric care on January 7, 2005, following three suicide attempts within a two-week period, and it was noted Plaintiff had been on the psychiatric medication Celexa for two years and wanted "to be hospitalized so that she can learn how to cope and get emotionally stable." Tr. 333, 359-365.  In June 2006, Plaintiff was again hospitalized for suicidal thoughts. Tr. 348-354.  It was noted Plaintiff had a long history of mood swings and affective lability and experienced significant life stressors that led her to not being able to manage her normal levels of distress. Tr. 349.  In July 2012, state agency reviewing physicians opined that Plaintiff's anxiety disorders were severe impairments. Tr. 110.  It was noted that Plaintiff's anxiety with accompanying poor stress tolerance "would interfere with her ability to maintain regular attendance and to persist through a normal workweek.  However, this impairment is not so severe that it would prevent her from being able to sustain more than one or two step instructions in a reasonably consistent manner." Tr. 115.

It is apparent from the foregoing medical evidence that Plaintiff's claim of severe mental impairments was not "groundless." *Smolen*, 80 F.3d at 1290.  The record reflects mental problems sufficient to pass the de minimis threshold of step two of the sequential evaluation process. *Id*.

Based on the foregoing, the Court thus finds the ALJ erred at step two of the sequential evaluation process.  Accordingly, this matter must be remanded for additional proceedings in order for the ALJ to take into consideration Plaintiff's severe hand/wrist impairments, arthritis, and mental impairments and the

---

DSM–V. Diagnostic And Statistical Manual of Mental Disorders, 16 (5th ed. 2013).  Nevertheless, "a GAF score may be of considerable help to the ALJ in formulating the RFC." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 17

limitations those impairments have on Plaintiff's functionality. Although the Court finds that the ALJ erred at step two, it is not clear from the record, as it currently stands, whether Plaintiff's severe physical and mental impairments, either singly or in combination, would prevent her from performing substantial gainful employment. Further development is necessary for a proper determination.

### C.    Mary Pellicer, M.D, and Ogechi H. Mbakwe, M.D.

Plaintiff contends the ALJ also erred by rejecting the medical opinions of Drs. Pellicer and Mbakwe. ECF No. 15 at 18-20.

As determined above, in light of the ALJ's erroneous step two determination, this matter must be remanded for additional proceedings. On remand, the ALJ shall reassess the medical opinions of Dr. Pellicer, Tr. 408-414 (manipulative limitations noted), and Dr. Mbakwe, Tr. 591-592 (opinion regarding absenteeism), as well as all other medical evidence of record relevant to Plaintiff's claim for disability benefits. Furthermore, the ALJ shall direct Plaintiff to undergo a new consultative physical examination with particular emphasis on Plaintiff's hand/wrist impairments and arthritis. If warranted, the ALJ shall additionally elicit the testimony of a medical expert at a new administrative hearing.

### CONCLUSION

Plaintiff argues the ALJ's decision should be reversed and remanded for an immediate award benefits. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

On remand, the ALJ shall revisit step two of the sequential evaluation process and take into consideration Plaintiff's hand/wrist impairments, arthritis,

and mental impairments and the limitations stemming from those impairments; reassess Plaintiff's RFC, taking into consideration the opinions of Drs. Pellicer and Mbakwe, as well as any additional or supplemental evidence relevant to Plaintiff's claim for disability benefits; and develop the record further by requiring Plaintiff to undergo a new consultative physical examination with particular emphasis on Plaintiff's hand/wrist impairments and arthritis and a new consultative psychological examination prior to a new administrative hearing.  If warranted, the ALJ shall additionally elicit the testimony of medical experts to assist the ALJ in formulating a new RFC determination.  The ALJ shall obtain supplemental testimony from a vocational expert, if necessary, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED, in part**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED January 31, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE